## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF FLORIDA
### Fifth Division Case No.

Troy Kenneth Scheffler,
                    Plaintiff,

Vs.

County of Crow Wing,

Scott D. Goddard, *in his official capacity as former Crow Wing County Sheriff,*

Timothy M. Houle, *in his official capacity as Crow Wing County Administrator,*

Douglas R. Houge, *in his official capacity As Crow Wing County Commissioner,*

William J. Brekken, *in his official capacity As Former Crow Wing County Commissioner,*

and

John Doe, *in their official capacity as employed by the County of Crow Wing,*
                    Defendants.

23-cv-1153 KMM/LIB



RECEIVED
BY MAIL
APR 24 2023

CLERK
U.S. DISTRICT COURT
MINNEAPOLIS MINNESOTA



SCANNED
APR 24 2023
U.S. DISTRICT COURT MPLS

---

### COMPLAINT – TRIAL BY JURY DEMANDED

---

COMES NOW THE PLAINTIFF AND STATES HIS CAUSE OF ACTION AS FOLLOWS:

### INTRODUCTION

Plaintiff Troy Scheffler sues defendants for actions under the United States Constitution 1st and 14th Amendments, from defendants' violation of Plaintiff's ability to access and participate on County operated social media,

1

Board meetings, and subsequent associated demands for data associated to the social media and other data, raising claims under the Minnesota Data Practices Act.

## SUBJECT MATTER JURISDICTION

1.    Scheffler states claims that constitute federal questions under 28 U.S.C. 1331 and 18 U.S. Code 2724.

2.    Scheffler states supplemental claims under Minnesota law under 28 U.S.C. 1367.

## VENUE

3.    Mr. Scheffler lays venue and this division in accordance with 28 U.S.C. 1391 and LR D. Minn. 83.11 because the substantial number of events giving rise to this lawsuit took place in Crow Wing County, Minnesota.

## PARTIES

4.    Plaintiff Troy Kenneth Scheffler is an adult man, born on 02/05/1976, domiciled at 26359 Shandy Trl, Merrifield, MN 56465.

5.   Defendant County of Crow Wing is a county within the State of Minnesota with a county seat located in the City of Brainerd with their administrative offices at 326 Laurel St, Brainerd, MN 56401.

6.   Scott D. Goddard is a former Sheriff of Crow Wing County who acted under color of law for the acts stated in this Complaint and whose office was located at 304 Laurel St., Brainerd, MN 56401 and domicile is located at 6626 Buschmann Rd, Breezy Point, MN 56472.

7.   Timothy M. Houle is the County Administrator and Minnesota Data Practices Act Responsible Authority for the County of Crow Wing who acted under color of law for the acts stated in this Complaint and is an adult domiciled at 15095 Warrior Ave, Brainerd, MN 56401.

8.   Douglas R. Houge is a Crow Wing County Commissioner who acted under color of law for acts stated in this Complaint and is an adult domiciled at 18594 Landing Rd., Ironton, MN 56455 whose acts stated in this complaint did occur within the County of Crow Wing and were made under color of law.

9.   William J. Brekken was formally a Crow Wing County Commissioner who acted under color of law for the acts stated in this Complaint and is an adult domiciled at 20891 Donaldson Rd., Brainerd, MN 56401.

10.    John Doe is an unidentified adult employee employed by the County of
Crow Wing who acted under color of law for acts stated in this Complaint and
whose actions stated in this Complaint did occur within the County of Crow
Wing.

## FACTS

11.    That over the years of 2020-2023, Plaintiff had made numerous posts
on numerous videos on the Crow Wing County official YouTube channel's
comment section and live feed.

12.    That Defendant County of Crow Wing operates the channel.

13.    That Plaintiff mainly posted his comments on videos he appeared in.

14.    That no comment violated any law.

15.    That an employee or employees, employed by Defendant County of
Crow Wing, did in fact hide many of these comments and otherwise deleted
the comments and live feed comments by deleting the live feeds altogether.

16.    That during the months of March and April 2022, Plaintiff did post
numerous comments on the official Crow Wing County Sheriff's Office
Facebook page.

17.    That Defendant County of Crow Wing and the Sheriff operates the page.

18.    That most comments made were critical of then Chief Deputy, but now former Chief Deputy Andrew Galles and then Sheriff, but now former Sheriff Scott Goddard.

19.    That Andy Galles, Scott Goddard, and John Doe did in fact hide and otherwise delete these comments.

20.    That on or about 03/11/2022, Plaintiff did post a comment on a post the Sheriff's Office made on their Facebook page 01/31/2022 (concerning distribution of KN95 facemasks), stating, "Ok, whatever. If the sheriff wants to distribute these wastes because the already wasted our money, fine. However making comments on Omicron and the fact Goddard assisted in shutting down small businesses is where I have a problem. Important to mask up? Eat shit."

21.    That said post was hidden to the public by the defendants.

22.    That on or about 04/08/2022, Plaintiff did post a comment on a post the Sheriff's Office made on their Facebook page 04/04/2022 (concerning Sexual Assault Awareness Month and Sexual Assault Services), stating, "Is Galles

teaching a class? Asking for a friend... Like have him be the what not to do guy."

23.    That Galles at the time was being accused of sexual misconduct with county employees and members of the public.

24.    That said post was deleted by the defendant John Doe, Scott Goddard or Andrew Galles, shortly after Plaintiff posted it.

25.    That Plaintiff again posted the same message which was quickly hidden from the public by the defendants.

26.    That Doe, Goddard, and Galles each had moderation access to the Sheriff page and all acted collectively in continued deletion and hiding of public comments.

27.    That Galles and Goddard acted as policy makers and issued directives to John Doe to delete and hide public comments.

28.    That the County of Crow Wing was actively trying to ignore and cover up the sexual harassment scandal/allegations which were formally reported by a member of the public on 07/13/2021 and possibly further back by others.

29.    That the County of Crow Wing Commissioners didn't even bother to discuss the matter until 02/28/2022 when they had unlawful closed sessions

concerning an employee that by statute serves at the behest or in the absence
of the Sheriff who therefore the County Board has no authority. See: MN
Stat. 387.145; *Gramke v. Cass County*, 453 NW 2d 22 - Minn: Supreme Court
1990

30.    That County Commissioner Chair Rosemary Franzen lied, in continued
cover-up, to the public on 09/13/2022 claiming the matter was immediately
investigated when the County was made aware; at the same meeting,
Goddard gave Franzen a glowing endorsement.

31.    That on 03/14/2022, Plaintiff emailed Tim Houle an MGDPA demand
for 5 data inquiries which included a request for "The recent results of the
Crow Wing County Sheriff's Office satisfaction survey." (Later identified as
an Engagement Survey")

32.    That on 03/22/2022, Houle responded in part to 4 of the requests, but
completely ignored the request concerning the satisfaction survey.

33.    On 03/22/2022, again responded stating that, "I cannot help you with
what you can or should infer from the absence of a record.  I can only help
you determine if a record exists that is responsive to your request and to
supply you the same."; still failing to acknowledge the request for the survey
or if the "record exists".

7

34.     That on 05/19/2022, after acquiring the exact name of the survey and discovering it did indeed exist, Plaintiff emailed Houle, "I find it incredibly hard to believe that key card access to the Sheriff's Office isn't logged... Also, I am not playing semantic games about the survey I previously requested. You know exactly the one I am referring to: Crow Wing County (Inc) Engagement Report done by McLean & Company between 10/19/2021 to 11/02/2021. You know, the one that has the Sheriff's Office and Jail dead last... This needs to be disclosed and emailed to me immediately."

35.     That on 05/24/2022, Houle responded, "I apologize for any confusion on your request. We do have customer satisfaction survey results, but not for the Sheriff's Office and when I hear that term, that is what I think of. We do not do an employee satisfaction survey as that is not what we are interested in knowing. We do measure employee engagement, which I would define as the degree to which an employee will engage in discretionary effort toward advancing our mission; I see it as a productivity measure or, stated another way, a measure of the ROI on our labor spend."

36.     That shortly after, Plaintiff was given an unredacted copy of the survey.

37.     That on 04/28/2022, Kelly Avelsgard made an email MGDPA request for the survey stating, "This is my request, pursuant to the Minnesota

8

Government Data Practices Act, for copies of the most recent Crow Wing County Employee Engagement Survey, Sheriff's department only. A copy of the most recent survey if it is not titled correctly above."

38.     Shortly after, Houle responded stating, "Mel: Please provide me an estimate of the number of pages of responsive data, if less than 100 pages, or the time and materials estimate for completing this data request. Mr. Avelsgard: I will be in touch as soon as I have an estimate of the cost of your data request. I will provide you an estimate so you can decide prior to commencing the search if you wish to have us proceed. We will require a deposit in the amount of the estimate prior to beginning the search."

39.     That Houle for no apparent reason other than to give Scott Goddard a "heads up", forwarded the request to him.

40.     That Houle knew exactly what Avelsgard was requesting, had it readily available, and knew the exact cost despite playing coy as he did with Plaintiff's request on 03/14/2022.

41.     That it was widely known that the survey had dismal results for Goddard's department and the survey had been used in a presentation to the County Board at least as recent as 03/07/2022.

42.     That on 03/30/2022, upon request for data concerning a county

employee "Engagement Survey", by a member of the public, whom is blind,

the County of Crow Wing released the data to the citizen after unlawfully

redacting all negative data related to the Sheriff's Office without giving

lawful cause as required by the MGDPA; knowing that the recipient was

blind and wouldn't notice the redactions using his reading assist equipment.

43.     That Houle was clearly and willingly frustrating the public's lawful

access to the data.

44.     That on 04/24/2022, Plaintiff emailed the Data Practices Responsible

Authority for the County, Tim Houle, and Responsible Authority for the

Sheriff's Office, Scott Goddard, requests for data under the Minnesota Data

Practices Act.

45.     Said email requested data concerning Sheriff's Office employees who

accessed Plaintiff's private driver's license data on numerous dates between

2020-2021, individuals who have moderator access to the Crow Wing County

Sheriff's Office Facebook page, and the individual who deleted and hid

comments on the Sheriff's Office 04/04/2022 Facebook post.

46.     On 04/25/2022, Tim Houle responded via email stating for Darcy Dwyer

to "log the request" and that, "We will be in touch when we have an estimate

of the charges associated with this request for you to authorize prior to the search being completed."

47.   Plaintiff immediately responded stating, "Ok, but I don't see anything that needs copying for 'pages'"

48.   Tina Elder, an employee that works at the Sheriff's Office, immediately responded that Plaintiff was correct and "We will begin working on the request and forward to you what we have as it is available."

49.   On 05/23/2022, Tim Houle emailed Plaintiff in response to the 04/24/2022 request, "All requests for the identification on of an individual is not public data. M.S. 13.43, Subd. 2a specifies all data on public employees that is public" following with the statement that the DVS data was related to "legitimate law enforcement function".

50.   That MN Stat. 13.43, Subd. 2(a), clause (1) literally states that an employee's "name", exactly what Houle and Goddard refused to disclose, is what Plaintiff asked and is "Public Data" required to be disclosed.

51.   That on 04/26/2022, after Plaintiff had notified the defendants that he knew they were deleting posts, defendants intentionally deleted all posts from the Sheriff's Office Facebook page from 09/22/2021 to 04/26/2022.

52.    That on 04/26/2022, Plaintiff emailed Houle, Goddard and Elder with an MGDPA request.

53.    Said request demanded the individual who deleted the Facebook posts from 09/22/2021 to 04/26/2022 and informed them that destroying evidence was "insane".

54.    Said request demanded, "please disclose ALL the known employees affected by the misuse of taxpayer funded security cameras and systems wherein Galles used security cameras to take still photos of employees to make 'memes' and circulate the content to others."

55.    On 04/27/2022, the Brainerd Dispatch broke the story that the posts were deleted.

56.    Knowing the statement to be false, Houle told the Dispatch, "It's not like we would have the authority to go back in and delete the posts going back to '21. I don't believe we can do that."

57.    Houle was well aware prior to the story that County moderators could and were deleting and hiding posts as he admitted to the Dispatch, "We do have a social media policy. We have deleted posts that are in violation to our policy. Most often that has been for profanity. It has occurred three times in the last 5 years."

58.   That said, "policy" is wildly repugnant to the principles of the 1st and

14th Amendments of the United States Constitution and clearly established

law; Houle presented it to the Board for approval on 05/14/2019 and for

amendment on 10/13/2020 (Passing unanimously by Brekken, Koering,

Franzen, Houge, and Barrows); the very first day which Plaintiff appeared at

a Board meeting and around the time Plaintiff originally began posting on

Crow Wing County social media.

59.   Violative policy includes, but is not limited to, "Crow Wing County staff

will monitor content and comments on social media to ensure adherence to

our social media policy and the interest and goals of Crow Wing County. For

purposed of this policy, "comments" include information, articles, pictures,

videos or any other form of communicative content posted on Crow Wing

County social media sites. Staff representatives will be authorized to create,

edit and delete posts. Some events, occasion and topics may influence more

updates and participation than others. Staff representatives will have a daily

presence on the social media sites during normal business hours to monitor

activity and respond to messages and comments."

https://www.crowwing.gov/1505/Social-Media-Policy

60.   Said policy in no uncertain terms establishes that the County of Crow

Wing will arbitrarily and capriciously delete comments and preclude

13

participation based upon its own goals rather than equally applying a policy of equal participation and protection of public interests.

61.    That said policy states, "Crow Wing County social media sites are authorized solely for the office/department to express its views as an organization and provide information, and not to create a public forum."

62.    This is clearly not based in reality considering, as the policy acknowledges, comments are open to the public to make when the pages can otherwise be set to not allow comments.

63.    That the County and Sheriff's Facebook and YouTube comment sections are, in fact and law, public forums.

64.    That Goddard and Houle are policy makers with regard to the posted policy and are also responsible for compliance with the Minnesota Government Data Practices Act in general and its data retention mandates.

65.    That Houle said the employee who deleted the posts, one of four with access, did so while attempting to retrieve information related to the data request.

66.    That Houle's statement is an admission that he was unlawfully attempting to cover the matter up as his denial to Plaintiff was that an

employee's name is protected data which is not conducive to the statement to the Brainerd Dispatch that the request by Plaintiff was being researched.

67.     That the seven months of posts were deleted to destroy the evidence related to Plaintiff's request for data.

68.     That each member of the County Board read about and was otherwise aware of the deletion of the posts as Houle informed them.

69.     On 04/28/2022, Houle responded to Plaintiff's email, "The name of the person who inadvertently deleted the posts is not public data. M.S. 13.43, Subd. 2(a) specifies all data on public employees that is public" and responded to the Galles inquiry with, "investigatory data on a public employee is not public data unless the final disposition results in disciplinary action. Given that the investigation is underway at this time, the data you seek is not public data at this time"

70.     That defendants were aware of who deleted the months of posts and refused to release the requested public data contrary to law and to avoid accountability.

71.     That on 06/14/2022, Plaintiff did, in person, attend the Crow Wing County Regular Board Meeting.

72.    That then Board Chair Doug Houge stated there would be 3-minute time limit for public open forum.

73.    That during open forum, Councilman Paul Koering questioned Plaintiff's integrity when he exercised his Constitutional right to record a prior open meeting.

74.    That Plaintiff did in fact record the open meeting which was completely lawful.

75.    That when Plaintiff's turn to speak and was called for open forum, Councilman Bill Brekken rudely joined in with a prewritten plan Doug Houge and Brekken had devised to berate and demoralize Plaintiff before he had a chance to speak so as to poison the well and lower in estimation to the public anything he had to say but for addressing their treacherous statements.

76.    Nobody on the Board objected.

77.    That the Board anticipated Plaintiff arriving at the Board meeting from prior practice, Plaintiff's data requests to Houle that he shared with the Board, and following the Brainerd Dispatch article.

78.    That the Board failed to give Plaintiff or the Public any notice of this plan by the Board to address and sabotage Plaintiff's ability to speak and poison the well.

79.    That Brekken's diatribe revolved around Brekken's displeasure of Plaintiff exercising his 1st Amendment in the past and present.

80.    That Brekken demanded unlawful confines upon Plaintiff's speech "when addressing the County Board or when addressing anyone that works for or associated with Crow Wing County" qualifying by saying that it must be done "respectfully".

81.    When he finally ceased with his beratement, Plaintiff rebutted specifically to Brekken as the torch hadn't passed to Plaintiff.  During the rebuttal, Plaintiff schooled Brekken on the 1st Amendment and told him he is in the wrong job if he doesn't respect the 1st Amendment.  Plaintiff spoke for approximately 25 seconds in rebuttal.

82.    Plaintiff then started what he came there for and in approximately 10 seconds Brekken frantically interrupted and called for a recess.

83.    Nobody on the Board objected; despite now Chair Rosemary Franzen on 08/23/2022 disingenuously claiming during election season, "I was elected by The People to listen to The People and I won't stop listening".

84.    The Board is no stranger to being hostile to the 1st Amendment as evinced when on 11/09/2021, Brekken and Hogue placed Steve Roell, a part-time resident, on the Board agenda to complain for over 16 minutes, ironically, about a neighbor expressing free speech and advocating for the County to arrest him. (It should be noted Koering was not present)

85.    Franzen thanked Roell after he unabashedly advocated against the 1st Amendment and not one Board member objected when Commissioner Steve Barrows declared the Board "Rulers of the Land".

86.    That at this very moment Brekken followed through with his prior dictates and he along with Houge granting the recess, violated Plaintiff's 1st Amendment rights.

87.    No Board member objected.

88.    That the recess was exclusively meant to deny Plaintiff's ability to freely speak in the instant and to seek permanent silence of Plaintiff.

89.    During the inordinately long recess, Brekken tried to get Sheriff's Deputy A1dam Kronstedt to remove Plaintiff from the Board Room; a command he refused to comply with.

90.    That due to the prior hostility expressed by Brekken and the Board, Plaintiff feared he would be removed and arrested during this conversation he could not fully hear at the time.

91.    After reconvening, Plaintiff again spoke for approximately 2 minutes and 25 seconds and then Houge interrupted Plaintiff telling him his time was over.

92.    Plaintiff informed Houge he had a legal right to have a full 3 minutes and had 30 seconds remaining.

93.    Houge denied Plaintiff his time and he was forced to withdraw from the podium.

94.    That other speakers were allowed to speak unmolested for 3 minutes.

95.    That on 12/22/2022, Plaintiff emailed an MGDPA demand upon Tim Houle.

96.    That said demand stated, "Please disclose each and EVERY email, note, recording, or any other communication made by YOU, Gary Griffin, Rosemary Franzen, any other board member, or any other county employee regarding Lake Edward Township (Loni Bernard, etc) and assessments/liens against any property of mine.  Also, disclose ALL emails, between Rosemary Franzen and Lake Edward Township (Loni Bernard, etc) from 09/2019."

19

97.    The demand was further clarified with, "To clarify that is 09/19 to current date. Don't forget the emails the board, ie Franzen, forwards themselves in an effort to avoid the law and transparency."

98.    On 12/23/2022, Houle responded, "Darcy: Please log the request. Melissa: Please pull any responsive data."

99.    On 12/19/2022, Darcy Dwyer responded, "For the first part of your data request:

Please disclose each and EVERY email, note, recording, or any other communication made by YOU, Gary Griffin, Rosemary Franzen, any other board member, or any other county employee regarding Lake Edward Township (Loni Bernard, etc) and assessments/liens against any property of mine.

We have no additional responsive data from what your received from the County Attorney's Office on 12/21/22.

For the second part of your data request:

Also, disclose ALL emails, between Rosemary Franzen and Lake Edward Township (Loni Bernard, etc) from 09/2019.

The County Attorney's office is reviewing this and will be in contact with you."

100.   The County Attorney's Office never contacted Plaintiff with regard to this statement.

101.   That on, 01/23/2023, Dwyer emailed Plaintiff stating, "Good afternoon, The second part of your data request has been determined to be over broad. Please refine this data request with more specifics if you want us to continue."

102.   Plaintiff responded, "This request is quite specific".

103.   Defendants failed to release the data or respond timely.

104.   That the request is not overbroad and was specific to communication of all data which simply included all emails sent between Rosemary Franzen and Lake Edward Township from 09/2019 to the date of the request.

105.   This request was not complicated and represents an average request for emails and could not have been made simpler.

106.   With all requests, Defendants willfully violated the MGDPA.

107.   That the County Administrator acts as an apparatchik to cover for misdeeds of the Board and Sheriff and intentionally frustrates data demands to that end.

108.   That Crow Wing County and Goddard has been sued by Plaintiff in the past over the MGDPA.

109.   During that suit, Houle on 12/14/2020, unlawfully denied a data request stating, "It was just recently brought to my attention that you have filed a lawsuit against Crow Wing County.  Given that your data request is related to the same issues, I will not be able to honor your data request."

110.   That the aforementioned "Engagement Survey", with the County Administrator being the top bureaucrat, found that only 26% believe "The County Administrator inspires me" and less than half "Trust the members of the senior management team".

## CLAIMS

### I.   U.S. 1983; 1st Amendment (Social Media)

111.   That Defendants, under color of law, Goddard and John Doe, under color of law, did in fact hide and delete comments individually and collectively from the Crow Wing County Sheriff's Office Facebook page that

Plaintiff had posted on numerous occasions including, but not limited to posts made on 03/11/2022, 04/08/2022.

112.   That Plaintiff, while making these posts, was lawfully participating in protected speech.

113.   That Plaintiff's posts were made on a government facilitated and public forum.

114.   That by deleting or hiding Plaintiff's posts, defendants were unlawfully denying him his right to openly and publicly protest, express, make grievance, and otherwise make grievance with regard to the acts, conduct, and standing of the government.

115.   That all named defendants acted under a common goal and with actions as accomplices to each other and conspiratorially.

116.   That Goddard and Houle as department heads and the Board at large was aware and supported the violations of Plaintiff's rights, if not otherwise directly participating.

117.   That Houle otherwise participated as an accessory after the fact in depravation of Plaintiff's civil rights by actively hindering lawful discovery.

118.   That Houle devised the Crow Wing County Social Media Policy.

119.   That Plaintiff suffered damages including emotional distress at the hands of defendants Goddard, Houle, John Doe and including liability against the County of Crow Wing as made in a *Monell* claim as enumerated infra.

120.   That Plaintiff seeks compensatory damages in an amount to be determined by a jury.

121.   Plaintiff seeks damages jointly and severally from all named defendants.

122.   Plaintiff seeks punitive damages.

## II.   U.S. 1983; 1st Amendment (Board Meeting)

123.   That on 06/14/2022, Plaintiff did, in person, attend a Crow Wing County Board Meeting.

124.   That then Board Chair Doug Hogue stated there would be 3-minute time limit for public open forum.

125.   That the Board failed to give Plaintiff or the Public any notice of this plan by the Board to address and sabotage Plaintiff's ability to speak and poison the well.

126.   That Brekken with Houge's blessing, both acting color of law, demanded unlawful confines upon Plaintiff's speech "when addressing the County Board or when addressing anyone that works for or associated with Crow Wing County" qualifying by saying that it must be done "respectfully".

127.   When he finally ceased with his beratement, Plaintiff rebutted specifically to Brekken as the torch hadn't passed to Plaintiff.  During the rebuttal, Plaintiff schooled Brekken on the 1st Amendment and told him he is in the wrong job if he doesn't respect the 1st Amendment.  Plaintiff spoke for approximately 25 seconds in rebuttal.

128.   Plaintiff then started what he came there for and in approximately 10 seconds Brekken frantically interrupted and called for a recess and granted by Houge with Houle's blessing.

129.   That the recess was exclusively meant to deny, and did in fact deny, Plaintiff's ability to freely speak, make grievance, and seek redress in the instant and to seek permanent silence of Plaintiff.

130.   During the inordinately long recess, Brekken tried to get Sheriff's Deputy Adam Kronstedt to remove Plaintiff from the Board Room; a command he refused to comply with.

131.   That due to the prior hostility expressed by Brekken and the Board, Plaintiff feared he would be removed and arrested during this conversation he could not fully hear at the time.

132.   After unlawfully forcing to invest his time waiting, after reconvening, Plaintiff again spoke for approximately 2 minutes and 25 seconds and then Houge interrupted Plaintiff telling him his time was over.

133.   Plaintiff informed Houge he had a legal right to have a full 3 minutes and had 30 seconds remaining.

134.   Houge denied Plaintiff his time and he was forced to withdraw from the podium.

135.   That Plaintiff suffered damages including emotional distress at the hands of defendants Houge, Brekken, Houle, and including liability against the County of Crow Wing as made in a *Monell* claim as enumerated infra.

136.   Plaintiff seeks punitive damages.

137.   That Plaintiff seeks compensatory damages in an amount to be determined by a jury.

138.   Plaintiff seeks damages jointly and severally from all named defendants.

### III.   U.S. 1983; 14th Amendment (Social Media)

139.   That Defendants, under color of law, Goddard and John Doe, did in fact hide and delete comments from the Crow Wing County Sheriff's Office Facebook page that Plaintiff had posted on numerous occasions including, but not limited to posts made on 03/11/2022, 04/08/2022.

140.   That Plaintiff, while making these posts, was lawfully participating in protected speech.

141.   That Plaintiff's posts were made on a government facilitated and public forum.

142.   That by deleting or hiding Plaintiff's posts, defendants Goddard and John Doe were unlawfully denying him his right to openly and publicly protest, express, make grievance, and otherwise make grievance with regard to the acts, conduct, and standing of the government.

143.   That Goddard and John Doe precluded Plaintiff equal opportunity to participate as the rest of the public posting and not having their posts deleted or hidden.

144.   That Goddard, Houle, and John Doe, acted under a common goal and with actions as accomplices to each other and conspiratorially.

145. That Goddard and Houle as department heads and the Board at large was aware and supported the violations of Plaintiff's rights, if not otherwise directly participating.

146. That defendants Goddard, Houle, and John Doe precluded Plaintiff equal opportunity to participate as the rest of the public posting and no having their posts deleted or hidden.

147. That Plaintiff suffered damages including emotional distress at the hands of each named defendant including liability against the County of Crow Wing as made in a *Monell* claim as enumerated infra.

148. Plaintiff seeks punitive damages.

149. That Plaintiff seeks compensatory damages in an amount to be determined by a jury.

150. Plaintiff seeks damages jointly and severally from all named defendants.

### IV. U.S. 1983; 14th Amendment (Board Meeting)

151. That on 06/14/2022, Plaintiff did, in person, attend a Crow Wing County Board Meeting.

28

152.  That then Board Chair Doug Houge stated there would be 3-minute time limit for public open forum.

153.  That the Board failed to give Plaintiff or the Public any notice of this plan by the Board to address and sabotage Plaintiff's ability to speak and poison the well.

154.  That Brekken, while acting under color of law, demanded unlawful confines upon Plaintiff's speech "when addressing the County Board or when addressing anyone that works for or associated with Crow Wing County" qualifying by saying that it must be done "respectfully".

155.  When he finally ceased with his beratement, Plaintiff rebutted specifically to Brekken as the torch hadn't passed to Plaintiff. During the rebuttal, Plaintiff schooled Brekken on the 1st Amendment and told him he is in the wrong job if he doesn't respect the 1st Amendment. Plaintiff spoke for approximately 25 seconds in rebuttal.

156.  Plaintiff then started what he came there for and in approximately 10 seconds Brekken frantically interrupted and called for a recess.

157.  That the recess was exclusively meant to deny Plaintiff's ability to freely speak in the instant and to seek permanent silence of Plaintiff.

158.   That while acting under color of law, Houle promoted the recess and Houge enforced it.

159.   During the inordinately long recess, Brekken tried to get Sheriff's Deputy Adam Kronstedt to remove Plaintiff from the Board Room; a command he refused to comply with.

160.   That due to the prior hostility expressed by Brekken and the Board, Plaintiff feared he would be removed and arrested during this conversation he could not fully hear at the time.

161.   After reconvening, Plaintiff again spoke for approximately 2 minutes and 25 seconds and then Houge interrupted Plaintiff telling him his time was over.

162.   Plaintiff informed Houge he had a legal right to have a full 3 minutes and had 30 seconds remaining.

163.   Houge denied Plaintiff his time and he was forced to withdraw from the podium.

164.   That because other people were allowed to speak unfettered, Plaintiff was denied equal access.

165.   That Plaintiff suffered damages including emotional distress at the hands of defendant Houge, Brekken, and Houle, and including liability against the County of Crow Wing as made in a *Monell* claim as enumerated infra.

166.   Plaintiff seeks punitive damages.

167.   Plaintiff seeks damages jointly and severally from all named defendants.

168.   That Plaintiff seeks compensatory damages in an amount to be determined by a jury.

**V.   Minnesota Data Practices Act; Minnesota Statutes 13.08 (3/14/22)**

169.   That on 03/14/2022, Plaintiff emailed Tim Houle an MGDPA demand for 5 data inquiries which included a request for "The recent results of the Crow Wing County Sheriff's Office satisfaction survey." (Later identified as an Engagement Survey")

170.   That on 03/22/2022, Houle responded in part to 4 of the requests, but completely ignored the request concerning the satisfaction survey.

171.   On 03/22/2022, again responded stating that, "I cannot help you with what you can or should infer from the absence of a record.  I can only help

31

you determine if a record exists that is responsive to your request and to supply you the same."; still failing to acknowledge the request for the survey or if the "record exists".

172.   That on 05/19/2022, after acquiring the exact name of the survey and discovering it did indeed exist, Plaintiff emailed Houle, "I find it incredibly hard to believe that key card access to the Sheriff's Office isn't logged... Also, I am not playing semantic games about the survey I previously requested. You know exactly the one I am referring to: Crow Wing County (Inc) Engagement Report done by McLean & Company between 10/19/2021 to 11/02/2021. You know, the one that has the Sheriff's Office and Jail dead last... This needs to be disclosed and emailed to me immediately."

173.   That on 05/24/2022, Houle responded, "I apologize for any confusion on your request. We do have customer satisfaction survey results, but not for the Sheriff's Office and when I hear that term, that is what I think of. We do not do an employee satisfaction survey as that is not what we are interested in knowing. We do measure employee engagement, which I would define as the degree to which an employee will engage in discretionary effort toward advancing our mission; I see it as a productivity measure or, stated another way, a measure of the ROI on our labor spend."

174.   That shortly after, Plaintiff was given an unredacted copy of the survey.

175.   That under color of law, Houle willfully denied the lawful request an otherwise unlawfully delayed giving the Plaintiff the data.

176.   That Houle and the County of Crow Wing did cause damage to Plaintiff with regard to this claim.

177.   That Plaintiff seeks actual damages for emotional distress including, but not limited to exacerbation of insomnia.

178.   That Plaintiff seeks general and special damages.

179.   That Plaintiff seeks exemplary damages of $15,000.

180.   Plaintiff seeks punitive damages.

181.   That Plaintiff seeks compensatory damages in an amount to be determined by a jury.

## VI.   Minnesota Data Practices Act; Minnesota Statutes 13.08 (4/24/22)

182.   That on 04/24/2022, Plaintiff emailed the Data Practices Responsible Authority for the County, Tim Houle, and Responsible Authority for the Sheriff's Office, Scott Goddard, requests for data under the Minnesota Data Practices Act.

33

183.   Said email requested data concerning Sheriff's Office employees who accessed Plaintiff's private driver's license data on numerous dates between 2020-2021, individuals who have moderator access to the Crow Wing County Sheriff's Office Facebook page, and the individual who deleted and hid comments on the Sheriff's Office 04/04/2022 Facebook post.

184.   On 04/25/2022, Tim Houle responded via email stating for Darcy Dwyer to "log the request" and that, "We will be in touch when we have an estimate of the charges associated with this request for you to authorize prior to the search being completed."

185.   Goddard ignored the request.

186.   On 05/23/2022, Tim Houle emailed Plaintiff in response to the 04/24/2022 request, "All requests for the identification on of an individual is not public data. M.S. 13.43, Subd. 2a specifies all data on public employees that is public" following with the statement that the DVS data was related to "legitimate law enforcement function".

187.   That on 04/26/2022, after Plaintiff had notified the defendants that he knew they were deleting posts, defendants intentionally deleted all posts from the Sheriff's Office Facebook page from 09/22/2021 to 04/26/2022.

188.   Under color of law, that Houle and Goddard willfully denied the lawful request an otherwise unlawfully delayed giving the Plaintiff the data.

189.   That Houle Goddard and the County of Crow Wing did cause damage to Plaintiff with regard to this claim.

190.   That Plaintiff seeks actual damages for emotional distress including, but not limited to exacerbation of insomnia.

191.   That Plaintiff seeks general and special damages.

192.   That Plaintiff seeks mandamus relief to compel release of the data concerning who has access to the Sheriff's Facebook page and the names of the employees deleting public data.

193.   Plaintiff seeks damages jointly and severally from all named defendants.

194.   That Plaintiff seeks exemplary damages of $15,000.

195.   Plaintiff seeks punitive damages.

196.   That Plaintiff seeks compensatory damages in an amount to be determined by a jury.

**VII.   Minnesota Data Practices Act; Minnesota Statutes 13.08 (4/26/22)**

197.   That on 04/26/2022, Plaintiff emailed Houle, Goddard and Elder with an MGDPA request.

198.   Said request demanded the individual who deleted the Facebook posts from 09/22/2021 to 04/26/2022 and informed them that destroying evidence was "insane".

199.   Said request demanded, "please disclose ALL the known employees affected by the misuse of taxpayer funded security cameras and systems wherein Galles used security cameras to take still photos of employees to make 'memes' and circulate the content to others."

200.   On 04/28/2022, Houle responded to Plaintiff's email, "The name of the person who inadvertently deleted the posts is not public data. M.S. 13.43, Subd. 2(a) specifies all data on public employees that is public" and responded to the Galles inquiry with, "investigatory data on a public employee is not public data unless the final disposition results in disciplinary action. Given that the investigation is underway at this time, the data you seek is not public data at this time"

201.   That Houle and Goddard willfully denied the lawful request an otherwise unlawfully delayed giving the Plaintiff the data.

36

202.   That Houle Goddard, while acting under color of law, and the County of Crow Wing did cause damage to Plaintiff with regard to this claim.

203.   That Plaintiff seeks actual damages for emotional distress including, but not limited to exacerbation of insomnia.

204.   That Plaintiff seeks general and special damages.

205.   Plaintiff seeks punitive damages.

206.   That Plaintiff seeks mandamus relief to compel release of the requested data.

206.   That Plaintiff seeks exemplary damages of $15,000.

208.   That Plaintiff seeks compensatory damages in an amount to be determined by a jury.

## VIII.  Minnesota Data Practices Act; Minnesota Statutes 13.08 (12/22/22)

209.   That on 12/22/2022, Plaintiff emailed an MGDPA demand upon Tim Houle.

210.   That said demand stated, "Please disclose each and EVERY email, note, recording, or any other communication made by YOU, Gary Griffin, Rosemary Franzen, any other board member, or any other county employee regarding Lake Edward Township (Loni Bernard, etc) and assessments/liens

37

against any property of mine. Also, disclose ALL emails, between Rosemary Franzen and Lake Edward Township (Loni Bernard, etc) from 09/2019."

211. The demand was further clarified with, "To clarify that is 09/19 to current date. Don't forget the emails the board, ie Franzen, forwards themselves in an effort to avoid the law and transparency."

212. On 12/23/2022, Houle responded, "Darcy: Please log the request. Melissa: Please pull any responsive data."

213. On 12/19/2022, Darcy Dwyer responded, "For the first part of your data request:

Please disclose each and EVERY email, note, recording, or any other communication made by YOU, Gary Griffin, Rosemary Franzen, any other board member, or any other county employee regarding Lake Edward Township (Loni Bernard, etc) and assessments/liens against any property of mine.

We have no additional responsive data from what your received from the County Attorney's Office on 12/21/22.

For the second part of your data request:

Also, disclose ALL emails, between Rosemary Franzen and Lake Edward Township (Loni Bernard, etc) from 09/2019.

The County Attorney's office is reviewing this and will be in contact with you."

214. The County Attorney's Office never contacted Plaintiff with regard to this statement.

215. That on, 01/23/2023, Dwyer emailed Plaintiff stating, "Good afternoon, The second part of your data request has been determined to be over broad. Please refine this data request with more specifics if you want us to continue."

216. Defendants failed to release the data or respond timely.

217. That Houle and willfully denied the lawful request an otherwise unlawfully delayed giving the Plaintiff the data.

218. That Houle and the County of Crow Wing, while acting under color of law, did cause damage to Plaintiff with regard to this claim.

219. That Plaintiff seeks actual damages for emotional distress including, but not limited to exacerbation of insomnia.

220. That Plaintiff seeks general and special damages.

221.   That Plaintiff seeks mandamus relief to compel release of the requested data.

222.   That Plaintiff seeks exemplary damages of $15,000.

223.   Plaintiff seeks punitive damages.

224.   That Plaintiff seeks compensatory damages in an amount to be determined by a jury.

### IX.   *Monell* and Liability towards County of Crow Wing (I-IV)

225.   That the County of Crow Wing has a persistent pattern and practice of violating a person's 1st and 14th Amendment Constitutional rights.

226.   That Crow Wing has been sued now multiple times for constitutional violations.

227.   That numerous policy makers, department heads, and employees have taken a hostile stance against the 1st and 14th Amendment.

228.   That time and time again county wide from the Board to department to department, there is a hostility to the 1st and 14th Amendment.

229.   That the County of Crow Wing has developed a culture of violating a person's 1st and 14th Amendment Constitutional rights.

230.   Board members express clear hostility against people in open forum.

231.   The County Administrator supports violating the 1st and 14th amendments through subterfuge and writing social media policies.

232.   The County has shown special dispensation to citizens with giving them copious amounts of agenda time to advocate against the second amendment.

233.   That the county has a Social Media Policy that is insanely inapposite to the 1st and 14th Amendment.

234.   As a direct result of Defendant County of Crow Wing's failures and policies as described herein, Plaintiff suffered damages including severe emotional distress, fear, apprehension, concern for plaintiff's own safety, and harm to his reputation in the community.

235. Plaintiff seeks special, general, and emotional distress damages, from the County of Crow Wing.

**WHEREFORE**, Plaintiff Troy Scheffler prays for the following relief against the Defendants:

A. Judgment in the favor of Plaintiff against Defendants;

B. Joint and several liability;

C. Punitive damages;

D. Actual/Compensatory damages;

E. Reasonable attorney's fees;

F. Injunctive Relief;

G. Costs and disbursements in accordance with law;

F. Mandamus relief;

G. Statutory and Prejudgment interest in accordance with law;

H. TRIAL BY JURY for damages; and

I. Such other legal or equitable relief as this court is pleased to grant.

## VERIFICATION

Having reviewed the above complaint, plaintiff Troy Scheffler affirms under penalty of law that all statements above, excluding those made on information and belief, are true to the best of Plaintiff's present knowledge.

Date: 04-17-2023

Troy Scheffler
Plaintiff
26359 Shandy Trl
Merrifield, MN 56465
763-225-7702